IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KERRIE HIRTE,<br>as Personal Representative of the<br>ESTATE OF CILIVEA THYRION,<br>Deceased,<br><br>      Plaintiff,<br><br>      v.<br><br>MILWAUKEE COUNTY, WISCONSIN,<br>a municipal corporation; LATASHA<br>HETHINGTON, an individual; KAMRYN<br>PALMER, an individual; WELLPATH, LLC, a<br>Tennessee limited liability company; JOHN<br>DOE WELLPATH EMPLOYEES/AGENTS<br>1-10, individuals,<br><br>      Defendants. | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, Deceased, by and through counsel, The LaMarr Firm, and Hart McLaughlin & Eldridge, LLC, complains as follows against Defendants Milwaukee County, Wisconsin, a municipal corporation; Latasha Hethington, an individual; Kamryn Palmer, an individual; Wellpath, LLC, a Tennessee limited liability company; and John Doe Wellpath Employees/Agents 1-10, individuals:

### NATURE OF THE ACTION

1. On December 16, 2022, 20-year-old Cilivea Thyrion died by suicide while she was supposed to be on Suicide Watch in a Special Needs Pod of the Milwaukee County Jail at 949 N. 9th Street, Milwaukee, Wisconsin (the "MCJ").

2. Cilivea had a history of attempting suicide by swallowing non-consumable items. The MCJ and its employees and agents, including all Defendants, were aware of this specifically and placed Cilivea on Suicide Watch.

3. Despite Cilivea's known history of self-harm, MCJ staff provided her an adult diaper. This posed a known lethal risk to Cilivea given her history of self-harm. In turn, MCJ staff failed to monitor Cilivea after they had knowingly provided her the means to self-harm in violation of their constitutional and statutory duties.

4. As a result, Cilivea attempted to ingest parts of the diaper and choked to death.

5. Tragically, Cilivea's suicide is one of many in recent years at the MCJ. The MCJ has been plagued by overpopulation, severe understaffing, and an inability to handle persons with mental health crises in their custody.

6. For all of these reasons, Plaintiff Kerrie Hirte, Cilivea's mother, brings this action pursuant to 42 U.S.C. § 1983 against both the MCJ staff and entities responsible for operating the jail, to seek redress for Cilivea's suffering and untimely death.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the federal questions at issue pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as well as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Wisconsin. Moreover, all parties reside in the Eastern District of Wisconsin.

## THE PARTIES

9. Plaintiff Kerrie Hirte is the mother of decedent Cilivea Thyrion and has been appointed personal representative of Cilivea Thyrion's estate. Ms. Hirte is a citizen of the United States


2

Case 2:23-cv-01683-LA    Filed 12/15/23    Page 2 of 18    Document 1

and a resident of Brown County, Wisconsin. Ms. Hirte sues on behalf of Cilivea's estate and her survivors.

10. Defendant Milwaukee County is a governmental entity within the State of Wisconsin of which the MCJ is a part. The Milwaukee County Sheriff's Office operates the MCJ. Plaintiff sues Milwaukee County pursuant to the U.S. Supreme Court decision of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) and its progeny.

11. Defendant Latasha Hethington is a citizen of the State of Wisconsin and was at all relevant times a deputy sheriff/correctional officer with the Milwaukee County Sherriff's Office at the MCJ.

12. Defendant Kamryn Palmer is a citizen of the State of Wisconsin and was at all relevant times a deputy sheriff/correctional officer with the Milwaukee County Sherriff's Office at the MCJ.

13. Defendant Wellpath LLC ("Wellpath") is a Tennessee limited liability company. Wellpath contracts with Milwaukee County, Wisconsin, to provide medical care and mental healthcare to county jails. Wellpath began as Milwaukee County's correctional healthcare provider on April 1, 2019. On December 17, 2020, the Milwaukee County Board of Supervisors extended Wellpath's contract for an additional five years, followed by three optional one-year extensions.

14. Defendants John Doe Wellpath Employees/Agents 1-10 are as yet unknown employees/agents of Wellpath LLC who worked at the MCJ and were responsible for Cilivea Thyrion's well-being as nurses, social workers, psychologists, psychiatrists, medical doctors, and/or other medical and mental health care professionals. Plaintiff intends to convert this/these John Doe Defendant(s) with their true names upon discovery of their identities.

**FACTS APPLICABLE TO ALL COUNTS**

15. On December 16, 2022, Decedent Cilivea Thyrion was segregated in the Special Needs Pod of the MCJ and was designated on Suicide Watch. She was a pre-trial detainee, had not been

3

convicted of a crime, and therefore was subject to the protections of the Fourteenth Amendment at a minimum.

16. Cilivea had been on Suicide Watch for a minimum of 68 days during her detention at MCJ because she had repeatedly threatened to harm herself and had made several attempts to do so.

17. Cilivea had to be hospitalized outside of MCJ for several incidents of self-harm, specifically relating to consuming non-edible items and thus presenting a threat of choking, asphyxiation, and death.

18. MCJ personnel, including but not limited to Defendants, were aware of Cilivea's tendency toward self-harm by consuming non-edible items. All such personnel were also aware that such specific lethal tendency was a significant part of the reason Cilivea was placed on Suicide Watch.

19. MCJ personnel responsible for Cilivea's well-being had a duty to ensure that she did not have access to items that she could use to self-harm, including those which she could attempt to consume and choke on.

20. MCJ personnel responsible for Cilivea's well-being had a duty to constantly monitor Cilivea while she was on Suicide Watch.

21. On information and belief, MCJ personnel responsible for Cilivea's well-being had a duty pursuant to written policy to document their observations of Cilivea no less than every 15 minutes.

22. On December 16, 2022, Defendants Hethington and Palmer provided Cilivea a diaper for use alone in her cell on Suicide Watch.

23. Defendants knew or reasonably should have known that providing such a diaper posed a lethal risk to Cilivea given her repeated and recent history of potentially lethal self-harming by attempting to consume non-edible objects.

24. On information and belief, Defendants Hethington and Palmer did not obtain approval from medical or mental health professionals before providing the diaper to Cilivea.

25. Thereafter, Defendants Hethington and Palmer did not monitor Cilivea in accordance with MCJ policy requirements for monitoring detainees on Suicide Watch. Those on Suicide Watch are required to be monitored continuously. This need was particularly essential given the fact that Cilivea was on Suicide Watch and Defendants had provided Cilivea a diaper.

26. Shortly after entering her cell at approximately 10:03 a.m., Cilivea attempted to ingest the diaper and began choking.

27. No one responded to Cilivea for an extended period of time, until Defendant Hethington went to her cell no earlier than 10:28 a.m. Defendant Hethington and others did not enter Cilivea's cell under some time after that.

28. Cilivea choked to death on the diaper.

29. Cilivea's death could have been prevented if MCJ personnel had taken common sense, reasonable, and non-reckless actions, including but not limited to:

   a. Not providing the diaper to Cilivea, which they knew or should have known she could use to self-harm.

   b. Continuously monitoring Cilivea while on Suicide Watch.

   c. After providing the diaper to Cilivea which they knew could be used to self-harm, ensuring that Cilivea was continuously monitored in a place where timely, life-saving intervention would have been possible.

30. As alleged above, in the period leading to Cilivea Thyrion's death, she had repeatedly self-harmed by attempting to consume non-consumable material, prompting multiple trips to healthcare professionals both inside and out of the MCJ. MCJ staff, including Milwaukee County Sheriff's and Wellpath's employees, were aware of this.

31. Cilivea's repeated suicidal threats and attempts at suicide, including her ability to repeatedly self-harm by ingesting objects at the jail, demonstrated that the MCJ and Wellpath were incapable of reasonably ensuring Cilivea's well-being at the MCJ.

32. Both MCJ and Wellpath knew, or should have known, that they were incapable of reasonably ensuring Cilivea's well-being at the MCJ.

33. Both MCJ and Wellpath staff recognized or should have recognized this fact, but failed to take any steps to remedy the dangers posed to Cilivea at the MCJ, including by failing to seek placement of Cilivea at another institution that could reasonably ensure her well-being.

34. MCJ's and Wellpath's failures have been demonstrated repeatedly in recent years. Detainees have died as a result of suicide both before and after Cilivea's death, which could have been prevented by Milwaukee County, Wellpath, and their personnel.

35. Specifically, between January 2020 and April 2021, three detainees died by suicide.

36. On June 26, 2022, 20-year-old Brieon Green died by strangling himself.

37. In January 2023, 49-year-old Octaviano Juarez-Corro died by strangling himself.

38. In March 2023, 37-year-old Terrance Mack was found dead in his jail cell.

39. Due to the series of deaths above, including Cilivea Thyrion's death, the Milwaukee County Board of Supervisors authorized a review into the Milwaukee County Sheriff's Office's policies, procedures, and practices relating to suicide prevention, mental and physical health assessments, and training and staffing at the MCJ, as reflected in Milwaukee County Board Resolution File No. 23-554.

40. Prior to this review, the Milwaukee County Sheriff's Office had admitted that the MCJ has experienced overwhelming staffing shortages, including by way of corrections officers and medical/nursing staff contracted through Wellpath.

41. The National Commission on Correctional Healthcare (the "Commission"), which accredited MCJ in 2021 and reviews MCJ for accreditation in accordance with the Commission's standards, confirmed these admissions in its most recent review of MCJ ending in June 2023. That review looked back three years (to include the time encompassed by Cilivea Thyrion's death) and identified significant problems with both staffing and mental/medical intake procedures.

42. Specifically, the Commission noted in pertinent part:

…Numerous staff were working long hours during the three-year accreditation period and doing the best they could with what resources they had. Many short-staffed days required them to make difficult prioritization decisions to get as much as possible accomplished during their shifts.

In addition to the ongoing nursing vacancies (primarily at MCJ) health staff turnover has been extensive over the past 12 months, and has included the [Health Services Administrator], MCJ medical director, [Directors of Nursing], psychiatrist, dentist … [Continuous Quality Improvement Registered Nurse], mental health director, and the infection control RN.

43. The Commission also criticized MCJ's health record system, explaining that:

A primary concern about the health record system is that staff have reported on a number of occasions that the system is down too frequently. This downtime has a negative impact on the ability of health staff to efficiently access records during patient encounters and thus raises the risk of documentation not being completed or not being as comprehensive and accurate as it should be. As an example, [the electronic health record system] was down for approximately three hours during [the Commission's] June [2023] site visit.

44. The Commission also expressed serious reservations concerning Wellpath's screening of detainees upon admission at the MCJ. The Commission stated:

We will conduct a more detailed review of the receiving process at [MCJ and another facility] during our August [2023] site visit. It will involve a review of the timeliness of the prescreening, receiving screening, documentation, and referral processes.

We have concerns about stipulations in the Wellpath receiving screening policy and procedure to investigate. As written, the policy and procedure are not in compliance and if the stipulations are carried out in actual practice, this essential standard is not being met. We have discussed this matter with the [Health Services Administrator] and she has initiated a review.

> The bottom line is that a full receiving screening must be completed every time an individual is booked into either facility. This includes those who are booked in on weekends and those booked in again after having been recently released.

45. Subsequent to the release of the Commission's report, the Milwaukee County Sheriff's Office authored its initial response to Milwaukee County Board Resolution File No 23-554, entitled "Initial Report and Suggested Plans Regarding Milwaukee County Criminal Justice Facility Operations" ("Sheriff's Initial Report").

46. In the Sheriff's Initial Report, it acknowledged the problems at MCJ with respect to suicide screening and follow-up.

47. The Sheriff's Initial report also acknowledged problems observed "[re]lated to mental health care specifically … that Wellpath is understaffed" and that the Sheriff "understands that Wellpath, like the MCJ, is facing significant challenges in hiring and retaining mental health professionals due to the realities of the current job market."

48. Indeed, as a part of the investigation into Cilivea Thyrion's death, one nurse told investigators that she had concerns with nurses "being forced to make decisions outside of their job descriptions without the guidance of a doctor."

49. The Sheriff's staffing problems are so severe that it has repeatedly been in violation of the consent decree entered in *Christensen, et al. v. Sullivan, et al.*, Case No. 96-CV-001835 (Wis. Cir. Ct., Milwaukee Cty.) (the "Consent Decree").

50. As the Sheriff conceded in its Initial Report, "[s]ince the start of the Pandemic in March 2020, the MCJ has been unable to fulfill [the staffing] requirement of the Consent Decree. The MCJ is severely understaffed." There is currently a 40% vacancy rate for corrections officers, where only 148 of 231 budgeted positions are filled.

51. Understaffing at MCJ had long been an issue before Cilivea Thyrion's death. Indeed, one County Board Supervisor, a licensed physician who serves on the State of Wisconsin's medical

licensing board, addressed the issue of MCJ understaffing and noted that jails are sometimes forced to hire medical personnel who cannot obtain employment elsewhere because of "long previous records of drug convictions, drug violations, substance abuse issues, psychiatric health."

52. The results of understaffing are more severe given that the MCJ is regularly overpopulated, including on the date of Cilivea Thyrion's death.

53. The Sheriff's Initial Report conceded that "[a]s a result of the severe staffing shortages and population issues noted above, mandatory or 'forced' overtime has become a standard procedure to maintain facility operations." The Sheriff has acknowledged that "[t]his overtime puts immense stress on staff."

54. At bottom, the Sheriff has acknowledged that "the three most significant challenges that the MCSO is facing are staffing at the [Milwaukee County Jail], the inability of the medical and mental health service provider, Wellpath LLC, to fully staff the MCJ, and overpopulation at the MCJ."

55. On February 15, 2023, Plaintiff served by certified mail a notice of claim on Milwaukee County, the Milwaukee County Sheriff, and Wisconsin Attorney General, but never received a response.

## COUNT 1
### 42 U.S.C. § 1983 – Fourteenth Amendment
### (Against Defendant Latasha Hethington)

56. Plaintiff incorporates the allegations above as if fully restated here.

57. Defendant Latasha Hethington's actions and omissions with respect to Cilivea Thyrion were knowing, reckless, and objectively unreasonable and caused Cilivea Thyrion's injuries.

58. Defendant Hethington was aware of, or should have been aware of, facts demonstrating that Cilivea Thyrion was a suicide risk, particularly due to ingesting non-consumable materials.

59. Despite the above, Defendant provided an unapproved (medically or otherwise), non-consumable item (diaper) to Ms. Thyrion and failed to monitor Ms. Thyrion thereafter.

60. As a result, Cilivea Thyrion suffered personal injury, severe pain and suffering, emotional distress, and died.

61. Furthermore, Cilivea Thyrion's next of kin suffered damages as a result of her wrongful death, including loss of society, companionship, comfort, and services.

62. The acts and omissions of Defendant were intentional, wanton, malicious, and oppressive.

63. Defendant acted under the color of state law to deprive Cilivea Thyrion of her rights under the U.S. Constitution.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendant Latasha Hethington, for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 2
### 42 U.S.C. § 1983 – Fourteenth Amendment
### (Against Defendant Kamryn Palmer)

64. Plaintiff incorporates the allegations above as if fully restated here.

65. Defendant Kamryn Palmer's actions and omissions with respect to Cilivea Thyrion were knowing, reckless, and objectively unreasonable and caused Cilivea Thyrion's injuries.

66. Defendant Kamryn Palmer was aware of, or should have been aware of, facts demonstrating that Cilivea Thyrion was a suicide risk, particularly due to ingesting non-consumable materials.

67. Despite the above, Defendant provided an unapproved (medically or otherwise), non-consumable item (diaper) to Ms. Thyrion and failed to monitor Ms. Thyrion thereafter.

68. As a result, Cilivea Thyrion suffered personal injury, severe pain and suffering, emotional distress, and died.

69. Furthermore, Cilivea Thyrion's next of kin suffered damages as a result of her wrongful death, including loss of society, companionship, comfort, and services.

70. The acts and omissions of Defendant were intentional, wanton, malicious, and oppressive.

71. Defendant acted under the color of state law to deprive Cilivea Thyrion of her rights under the U.S. Constitution.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendant Kamryn Palmer, for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 3
### 42 U.S.C. § 1983 – Fourteenth Amendment
### (Against Defendants John Doe Wellpath Employees/Agents 1-10)

72. Plaintiff incorporates the allegations above as if fully restated here.

73. John Doe Defendants' actions and omissions with respect to Cilivea Thyrion were knowing, reckless, and objectively unreasonable and caused Cilivea Thyrion's injuries.

74. On information and belief, John Doe Defendants are registered nurses, social workers, psychologists, psychiatrists, medical doctors, and/or other medical and mental health care professionals employed and/or contracted by Wellpath and working at the MCJ.

75. All such persons, who were charged with evaluating and monitoring Cilivea Thyrion's medical and mental condition, particularly for any concern of a suicide risk, were aware of, or should have been aware of, facts demonstrating that Cilivea Thyrion was an imminent suicide risk as a result

of ingesting non-edible items. Such persons had a duty to ensure that such items were not available to Cilivea Thyrion and that Cilivea Thyrion was continuously monitored.

76. Furthermore, such individuals did, or should have determined, that they and the MCJ were incapable of ensuring Cilivea Thyrion's well-being and, therefore, should have sought placement for Thyrion at another sufficiently capable facility.

77. Defendants failed to do all of the above.

78. As a result, Cilivea Thyrion suffered personal injury, severe pain and suffering, emotional distress, and died.

79. Furthermore, Cilivea Thyrion's next of kin suffered damages as a result of her wrongful death, including loss of society, companionship, comfort, and services.

80. The acts and omissions of Defendants were intentional, wanton, malicious, and oppressive.

81. Defendant acted under the color of state law to deprive Cilivea Thyrion of her rights under the U.S. Constitution.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendants John Doe Wellpath Employees/Agents 1-10, for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT 4
### 42 U.S.C. § 1983 — *Monell* Liability / Understaffing
### (Against Defendants Milwaukee County and Wellpath LLC)

82. Plaintiff incorporates the above allegations as if fully set forth here.

83. Defendants Milwaukee County and Wellpath had of policy, pattern, and/or practice of understaffing the MCJ with correctional officers and/or medical and nursing staff. The policy, pattern, and/or practice resulted in regular, systemic understaffing at the MCJ in relevant respects.

84. Defendants Milwaukee County and Wellpath were aware of such systemic understaffing at the jail and further knew that it was deleteriously impacting jail operations, including by making them unable to adequately assess the medical and/or mental health of detainees, adequately house and/or monitor such detainees, and/or ensure detainee safety. There were numerous other suicides at the MCJ, described above, as a result of such deficiencies.

85. As a result of the above failures and by the deliberate indifference of Defendants in this respect, Cilivea Thyrion suffered severe pain and suffering and emotional distress and died.

86. Further, as a direct and proximate of the same, Cilivea Thyrion's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

87. Defendants Milwaukee County and Wellpath acted under the color of state law to deprive Cilivea Thyrion of her rights under the U.S. Constitution and violated 42 U.S.C. § 1983.

WHEREFORE, WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands against Defendants Milwaukee County and Wellpath LLC, for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT 5
### 42 U.S.C. § 1983 — *Monell* Liability / Unconstitutional Policy
**(Against Defendants Milwaukee County and Wellpath LLC)**

88. Plaintiff incorporates the allegations above as if fully restated here.

89. Defendants had a policy, procedure, pattern, and/or practice governing evaluation and monitoring of detainees that exhibited deliberate indifference to the risk of suicide. Specifically, such policy included infrequent and perfunctory check-ins with detainees, a failure to provide reasonably necessary directives to protect detainees, and/or a failure to ensure jail staff were implementing necessary directives to protect detainees from self-harm.

90. Defendants had such a policy despite knowing that suicide was a likely result of such neglect and indifference.

91. Defendants' policies in this respect constituted a violation of Cilivea Thyrion's constitutional rights.

92. As a result of the above deliberate indifference, Cilivea Thyrion suffered severe pain and suffering and emotional distress and died.

93. Further, as a direct and proximate of Defendants' deliberate indifference, Cilivea Thyrion's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

94. Defendants acted under the color of state law to deprive Cilivea Thyrion of her rights under the U.S. Constitution and violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendants Milwaukee County and Wellpath LLC, for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### Count 6
### 42 U.S.C. § 1983 — *Monell / City of Canton* Liability
### for Deliberate Indifference in Training
### (Against Defendants Milwaukee County and Wellpath LLC)

95. Plaintiff incorporates the allegations above as if fully restated here.

96. Defendants failed to adequately train Defendants Hethington, Palmer, and John Does 1-10, on monitoring detainees on Suicide Watch, on ensuring that such detainees are not provided the means to self-harm, and on recognizing when the MCJ is incapable of ensuring the safety of such detainees such that an alternative facility or placement should be sought.

97. Defendants' failures were demonstrated by their employees' and/or agents' failures with respect to Cilivea Thyrion.

98. Defendants' training failures resulted in the death of Cilivea Thyrion as well as other detainees as described above.

99. In the alternative, in light of the duties assigned to Defendants Hethington, Palmer, and John Does 1-10, Defendants' training failures made the need for more or different training so obvious, and the inadequacy of training so likely to result in the violation of citizens' constitutional rights, that Defendants can be said to have been deliberately indifferent to the need for more training. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 390 (1989).

100. Such a failure to train fairly represents a policy of Defendants such that they are responsible for Cilivea Thyrion's death and the failure to train constituted a deliberate indifference to the constitutional rights of citizens like Cilivea Thyrion.

101. As a result of the failure to adequately train in these respects, Cilivea Thyrion suffered severe pain and suffering and emotional distress and died.

102. Further, as a direct and proximate of the failure to train, Cilivea Thyrion's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

103. Defendants acted under the color of state law to deprive Cilivea Thyrion of her rights under the U.S. Constitution. As such, they have violated 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendants Milwaukee County and Wellpath LLC for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## Count 7
### Negligence
**(Against Defendants Latasha Hethington, Kamryn Palmer, and Milwaukee County)**

104. Plaintiff incorporates the allegations above as if fully restated here.

105. On information and belief, MCJ's rules expressly required that Latasha Hethington and Kamryn Palmer constantly monitor Cilivea Thyrion on Suicide Watch and particularly after providing her the diaper. They failed to do so.

106. To the extent MCJ's rules and/or Wellpath's (or other others') medical directives prohibited providing the diaper to Cilivea Thyrion, Defendants Hethington and Palmer violated that express rule by providing Cilivea the diaper.

107. In doing so, Defendants negligently performed ministerial acts which it was their duty to perform reasonably and adequately.

108. Further, Defendants Latasha Hethington and Kamryn Palmer were aware of a danger that was of such a quality that their duty to act, including by refraining from providing the diaper and/or continuously monitoring Cilivea Thyrion, was absolute, certain, and imperative.

109. Defendants' acts and omissions were performed in the course and scope of their employment with Milwaukee County and, therefore, Milwaukee County is liable for their negligence.

110. As a result of Defendants' negligent acts and omissions, Cilivea Thyrion suffered severe pain and suffering and emotional distress and died.

111. Further, as a direct and proximate of such failures, Cilivea Thyrion's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendants Latasha Hethington, Kamryn Palmer, and Milwaukee County for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## Count 8
### Negligence
### (Against Defendants John Doe Wellpath Employees/Agents 1-10, Wellpath LLC, and Milwaukee County)

112. Plaintiff incorporates the allegations above as if fully restated here.

113. Defendants John Doe Wellpath Employees/Agents 1-10 had a duty to provide reasonable medical and mental health care to Cilivea Thyrion while she was in their custody and on Suicide Watch.

114. Despite repeated instances of self-harm due to ingesting non-consumable items and their knowledge that MCJ was incapable of providing reasonable care to Cilivea Thyrion, Defendants ignored such evidence and failed to: (a) provide reasonable care; (b) issue directives to reasonably ensure Cilivea Thyrion's well-being; and/or (c) seek Cilivea Thyrion's transfer to a facility that could have provided reasonably adequate care.

115. In doing so, Defendants violated their duty of care to Cilivea Thyrion.

116. Defendants' acts and omissions were performed in the course and scope of their employment with Wellpath and/or Milwaukee County.

117. As a result of Defendants' negligent acts and omissions, Cilivea Thyrion suffered severe pain and suffering and emotional distress and died.

118. Further, as a direct and proximate of such failures, Cilivea Thyrion's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

WHEREFORE, Plaintiff Kerrie Hirte, as Personal Representative of the Estate of Cilivea Thyrion, deceased, demands judgment against Defendants Latasha Hethington, Kamryn Palmer, and Milwaukee County for compensatory damages, punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims herein.


Date: December 15, 2023                           Kerrie Hirte, as Personal Representative
                                                  of the Estate of Cilivea Thyrion, Deceased


                                    By:     /s/      *John Marrese*
                                                  One of the Attorneys for Plaintiff


B'Ivory LaMarr
THE LAMARR LAW FIRM
5718 Westheimer Road, Suite 1000
Houston, TX 77057
(800) 995-2934
blamarr@bivorylamarr.com

Steven Hart
Brian Eldridge
John Marrese
HART MCLAUGHLIN & ELDRIDGE, LLC
One South Dearborn, Suite 1400
Chicago, IL 60603
(312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com

*Attorneys for Plaintiffs*